IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|||||
|---|---|---|---|
| CLIFFORD E. MEREDITH, | * | | |
| Plaintiff | * | | |
| v. | * | CIVIL NO. JKB-10-837 | |
| INTERNATIONAL MARINE UNDERWRITERS, | * | | |
| Defendant | * | | |

## MEMORANDUM

Clifford E. Meredith ("Plaintiff") brought this suit against International Marine Underwriters ("Defendant"), alleging fraud, negligent misrepresentation, breach of contract, and violation of the Uniform Commercial Code and the Maryland Consumer Protection Laws in connection with Plaintiff's insurance policy. (Compl., ECF No. 2). Defendant now moves to exclude the testimony of Plaintiff's ten expert witnesses, pursuant to Federal Rule of Civil Procedure 37(c)(1), on the grounds that Plaintiff allegedly failed to provide expert reports as required by Federal Rule of Civil Procedure 26(a)(2)(B). (Def.'s Mot. Strike, ECF No. 29). The issues have been briefed and no oral argument is required. Local Rule 105.6. For reasons explained below, Defendant's Motion To Strike Plaintiff's Expert Designations (ECF No. 29) is GRANTED IN PART, DENIED IN PART, and HELD IN ABEYANCE IN PART. Sanctions are denied as to James Renn; the opinions of Captain Morgan and Thomas Babbitt as to causation and value at the time of the accident are excluded; and, further discovery is ordered as to all remaining witnesses and any other opinions of Morgan and Babbitt.

1

*I. Background*

In April of 2009, Plaintiff purchased an insurance policy ("the Policy") from Defendant, through the Avon Dixon Agency, LLC ("Avon Dixon"), to insure Plaintiff's vessel, "the Eleanor." (Compl. 2). The Policy contained a "Perils Clause," which insured the Eleanor for physical damage, among other things, but a separate "Exclusion Clause" explicitly excluded from coverage any damage resulting from Plaintiff's failure to maintain the Eleanor in a seaworthy condition. *Id*; (Def.'s Mem. Summ. J. 2, ECF No. 30-1).

In October of 2009, the Eleanor was found partially submerged in Peachblossom Creek while docked at a private residence in Easton, Maryland ("the Accident"). Shortly thereafter, Plaintiff submitted a claim under the Policy for damage the Eleanor sustained in the Accident. (Compl. 2). Defendant assigned a surveyor, J. Stephen Russell ("Russell"), to inspect the Eleanor and determine the cause of the Accident. (Def.'s Mem. Summ. J. 2). Russell concluded that the Eleanor was taking on water through a number of "leakage points" that were caused by normal wear and tear, particularly a two-inch gap between two hull planks. *Id*. After receiving Russell's report, Defendant denied coverage on the grounds that the Eleanor was unseaworthy at the time of the Accident, and that the damage therefore fell within the Policy's Exclusion Clause. *Id* at 8.

In March of 2010, Plaintiff filed the instant complaint in the Circuit Court for Anne Arundel County. *Id* at 3. Plaintiff's primary contention is that Defendant made representations, through its alleged agent, Avon Dixon, that the Policy would cover the Eleanor for any damage, regardless of the cause. (Pl.'s Aff. 1, ECF No. 32, Ex. 1). On that basis, Plaintiff asserts claims of fraud, negligent misrepresentation, and violations of the UCC and Maryland Consumer Protection Laws. *Id*. Additionally, Plaintiff alleges that the Accident was not caused by normal

2

wear and tear or a failure to maintain the Eleanor in a seaworthy condition, and that the damage is therefore covered under the Policy's Perils Clause. *Id*. On that basis, Plaintiff asserts a claim for breach of contract. *Id*.

Defendant removed the suit to this Court, invoking federal diversity jurisdiction. During discovery, Plaintiff disclosed the identities of ten expert witnesses who would offer opinion testimony regarding the cause of the Accident and damages. Those disclosures are reproduced here:

- **Captain Ronald Wm. Morgan:** "Capt. Ronald Wm. Morgan performed the pre-purchase inspection of the subject boat. He will testify as to sea worthiness of the vessel at that time including the condition of the hull. It is anticipated he will testify the condition of the hull which resulted in the sinking of the vessel was not as a result of normal wear and tear given the amount of time of his inspection and the subsequent sinking. He will also testify as to the value of the vessel at the time of his inspection and the value at the time of the sinking."

- **Captains Trevor Harmon and Richard Phillip:** "Captains Harmon and Phillip performed the salvage of the subject vessel. They will testify as to their opinion as to the cause of the sinking. They will also testify the cause of sinking was not as a result of failure to properly maintain said vessel nor as a result of normal wear and tear but rather by third causes. They will testify as to their fees to salvage said boat as well as the value of the subject boat at the time of the sinking. The [sic] will also testify as to loss of value."

- **Charles Smith:** "Charles Smith will testify as to repairs he performed on the subject vessel and the fairness reasonableness and causation of said repairs to the subject sinking. He will also testify future repairs to the vessel as a result of the sinking will cost $300,000. He will also testify the sinking was not as a result of failure to properly maintain said vessel nor as a result of normal wear and tear but as a result of third causes."

    "Charles Smith will testify as to extensive maintenance performed on said vessel in 2007 and how with said maintenance the damage which caused the vessel to sink was not as [sic] result of normal wear and tear or failure to maintain."

- **Captain Carl Thornton:** "Captain Carl Thornton was the captain of the Eleanor. He will testify as to the regular maintenance of the Eleanor and as to her sea worthiness at the time of the alleged sinking. He will also confirm said sinking was not as a result of normal wear and tear or failure to maintain."

- **Thomas Babbitt:** "Thomas Babbitt was the former owner of the Eleanor and will testify as to her condition at time of sale and how the said sinking was not as a result of normal wear and tear or failure to maintain given the condition of the boat at the time of sale."

- **James Renn:** "James Renn will also confirm said sinking was not as a result of normal wear and tear or failure to maintain. He will have reviewed the IMU surveyor's report and state that the loose caulking and boards most likely was caused by the boat sinking and that it is, within a reasonable degree of marine forensic science [sic], difficult if not impossible to state that the issues raised in the surveyor's report were existent before the sinking."

- **Michael Kaufman, Robert Geaghan, and Douglas Coupar:** "Mr. Kaufman, Geaghan and Coupar will testify as to the value of the 'Eleanor' in hers [sic] present condition, the cost to return her to her pre-sinking status and her value once all repairs are completed."

(Pl.'s Disc., ECF No. 31, Ex. 1). Plaintiff also disclosed a 2005 pre-purchase survey of the Eleanor prepared by Captain Morgan, a report and invoice submitted by Tow Jamm Marine for the Eleanor's salvage, and an invoice for $19,523.60 in repairs from Charles Smith. *Id.* Plaintiff did not, however, provide an expert report for any witness. (Pl.'s Resp. Opp. Strike 2, ECF no. 31).

On July 26, 2010, Defendant wrote to Plaintiff requesting all disclosures required by Federal Rule 26(a)(2), including expert reports. (Def.'s Mem. Strike 2, ECF No. 29-1) Plaintiff responded that "no reports had been generated," but noted that the witnesses were available for deposition. (Pl.'s Resp. 2); (Pl.'s Supp. Disc., ECF No. 31, Ex. 4). Defendant deposed one witness, James Renn, on January 7, 2011, but did not depose any of the other witnesses. (Renn Dep., ECF No. 31, Ex. 3). Plaintiff's only additional disclosures consisted of two letters, dated January 5 and 27, 2011. The first letter announced that "Charles Smith, Yacht Maintenance Co., Inc, [sic] 101 Hayward Street, Cambridge, Maryland 21613 will now testify the cost to restore The Eleanor to her condition on the date of incident will cost $1,000.000.00. [sic]," while the second included a copy of a yacht maintenance bill in the amount of $4,256.71. (Pl.'s Supp. Disc.).

4

Defendant now moves that the Court sanction Plaintiff for his failure to produce expert reports by excluding the testimony of his expert witnesses, pursuant to Federal Rule 37(c)(1).

*II. Standard of Review*

Federal Rule of Civil Procedure 26(a)(2)(A) requires litigants to disclose "the identity of any witness [they] may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." (West 2011). Rule 26(a)(2)(B) further requires litigants to produce written reports for any witness who is "retained or specially employed to provide expert testimony in the case" or "whose duties as the party's employee regularly involve giving expert testimony." Those reports must include: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness' qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case."

Rule 37(c)(1) "gives teeth to the written report requirement of Rule 26(a)(2)(B) by forbidding a party's use of improperly disclosed information at a trial, at a hearing, or on a motion, unless the party's failure to disclose is substantially justified or harmless." *Tokai Corp. v. Easton Enterprises*, 632 F.3d 1358 (Fed. Cir. 2011) (citing *Yeti By Molly Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir. 2001)) (internal quotations omitted). In determining whether a party's failure to disclose was substantially justified or harmless, this Court is guided by consideration of five factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5)

5

the non-disclosing party's explanation for its failure to disclose the evidence. *Southern States Rack And Fixture v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). The party facing sanctions bears the burden of establishing that its omission was justified or harmless. *Carr v. Deeds*, 453 F.3d 593, 602 (4th Cir. 2006).

Because a party's failure to make the disclosures required by Rule 26(a)(2) "unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case," a district court has "particularly wide latitude" to order sanctions under Rule 37(c)(1). *Id* at 604.

## III. Analysis

### A. *The Expert Report Requirement*

The Court must first determine whether Plaintiff's designated experts meet the criteria for mandatory reporting set out in Rule 26(a)(2)(B). Those criteria are the witness' being "retained or specially employed to provide expert testimony in the case" or having "duties as the party's employee [that] regularly involve giving expert testimony." For simplicity, the Court refers to this class of witness as *retained experts*. By exclusion, these criteria also define a category of expert witnesses who are *not* required to file reports: i.e., those who are or have been employed by the party in some capacity, but not specially for the purpose of giving expert testimony. *See, e.g., Watson v. U.S.*, 485 F.3d 1100, 1107 (10th Cir. 2007); *Tokai Corp. v. Easton Enterprises*, 632 F.3d 1358 (Fed. Cir. 2011) (citing *Torres v. City of Los Angeles,* 548 F.3d 1197, 1214 (9th Cir. 2008)); *Downey v. Bob's Discount Furniture Holdings*, 633 F.3d 1, 6 (1st Cir. 2011). These are referred to as *hybrid* witnesses (i.e., a hybrid of an expert and a fact witness).[1]

---

[1] The exemption of hybrid witnesses from Rule 26(a)(2)(B)'s reporting requirement is further established in this Court's local rules. *See* Local Rule 104.10.

This Court has previously construed the hybrid exception to be a narrow one, and has held that a witness may be a hybrid as to certain portions of his testimony and a retained expert as to others. *Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 500 (D. Md. 1997). The distinction lies in the source of the facts on which the witness' expert opinion is based. *See id*. To the extent that a witness' opinion is based on facts learned or observations made "in the normal course of duty," the witness is a hybrid and need not submit a report. *See id*; *National R.R. Passenger Corp. v. Railway Express*, 268 F.R.D. 211, 216 (D. Md. 2010) (citing *Desrosiers v. Giddings & Lewis Machine Tools*, 2009 WL 4406149 at *5 (D. Md. 2009)). The same witness, however, must submit a report regarding any opinions formed specifically in anticipation of the litigation, or otherwise outside the normal course of a duty. *Id*.

A party seeking to avoid producing an expert report bears the burden of demonstrating that the witness is a hybrid. *Lee v. Valdez*, 3:07-CV-1298-D, 2008 WL 4287730 (N.D. Tex. 2008); *Cinergy Commc'ns v. SBC Commc'ns,* 2006 WL 3192544, at *3 (D. Kan. 2006); *See Tokai*, 632 F.3d 1358 (upholding district court's exclusion of testimony where proffering party failed to produce evidence that witness was a hybrid). The initial question in this dispute is therefore whether Plaintiff has carried this burden by demonstrating that his expert witnesses formed their opinions in the normal course of their duties or activities in connection with the Eleanor. To the extent he has not so demonstrated, the Court must assume that the witnesses are retained experts.

Only three of the witnesses present clear-cut cases. First, Plaintiff concedes that it specially retained James Renn, an expert boat surveyor, to provide an opinion on the cause of the Accident. (Pl.'s Resp. 3). Renn is thus a retained expert. Second, Plaintiff has disclosed that the witness Captain Ronald Morgan's connection to this case is that he performed a pre-purchase

inspection of the Eleanor. (Pl.'s Disclosure 2). The Court is confident that Captain Morgan could not have formed an opinion about the cause of the Accident during his inspection, as the Accident had not yet occurred, nor could he have formed an opinion about the Eleanor's value at an as-yet-unknown point in the future. As to those opinions, therefore, Captain Morgan is a retained expert. Third, Plaintiff has disclosed that the witness Thomas Babbitt's connection to the case is that he was the Eleanor's former owner. Thus, he too is a retained expert as to any opinion regarding the cause of the Accident, for the same reason as Captain Morgan.

The issue is murkier for the remaining seven witnesses. It is plausible, for instance, that the salvors, Captains Harmon and Phillip, formed opinions about the cause of the Accident and the Eleanor's value in the course of refloating her; but, it is just as plausible that they formed these opinions later, after conducting research and making inquiries unrelated to the refloating, solely to be offered at trial in this case. The same is true of Charles Smith's opinions as to causation and the cost of future repairs, of Captain Thornton's opinion as to causation, and of all opinions of Messrs. Kaufman, Geaghan, and Coupar. Since Plaintiff has not carried his burden by affirmatively demonstrating that these opinions were formed in the course of the witnesses' performing their respective duties, the Court must conclude that they are retained experts as to those opinions, and Plaintiff was therefore obligated to supply expert reports.

### B. *Justification and Harmlessness*

Having determined that Plaintiff was obliged to provide expert reports for at least some of each witness' testimony, the Court must now determine whether the omission of those reports was "substantially justified or harmless" before considering sanctions, pursuant to Rule 37(c)(1). The Court applies the Fourth Circuit's five-factor test, set out previously in this memorandum. As the party facing sanctions, Plaintiff bears the burden of demonstrating the justification or

harmlessness of his omission. *See Carr*, 453 F.3d at 602. Because the question of whether or not Defendant deposed the witnesses plays a crucial role in the analysis, the Court will first assess the nine "un-deposed" witnesses, and will treat separately the single deposed witness, James Renn.

### *1. Witnesses Who Were Not Deposed*

The first two factors in the Fourth Circuit's test pertain to the surprise to the party against whom the evidence will be offered, and that party's ability to cure the surprise. *Southern States*, 318 F.3d at 597. Regarding the nine "un-deposed" witnesses, Plaintiff makes the glib assertion that his failure to produce the expert reports was harmless because he disclosed the "substance" of the witnesses' testimony, and because Defendant had the right to depose the witnesses if it wished. (Pl.'s Resp. 3). The Court finds a ready-made answer to this argument in the Advisory Committee Notes to Rule 26: in explaining the reasons for the expert reporting requirement in the 1993 amendment to the rule, the Committee wrote that "[t]he information disclosed under the former rule in answering interrogatories about the 'substance' of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert..." Fed. R. Civ. P. 26(a)(2)(B), Advisory Committee Notes (West 2011). The purpose behind requiring expert reports is thus precisely to compel parties to disclose more than a one or two sentence summary of a witness' conclusions (which is what Plaintiff has provided in this case) and to dispense with the need for full-blown expert depositions. *See id* ("...the length of the deposition of such experts should be reduced, and in many cases the report may eliminate the need for a deposition.").

A party's failure to disclose, therefore, cannot be considered "justified" or "harmless" simply because opposing counsel had an opportunity to depose the witness. This would shift to the opposing party the burden that Rule 26 indisputably places on the party calling the witness.

9

*See Carr*, 453 F.3d 593 at 605 ("Every litigant in federal court is plainly entitled under Rule 26(a)(2)(B) to be given the information spelled out therein, and none shoulder the burden to independently investigate and ferret out that information as best they can and at the expense of their client."). Plaintiff has therefore failed to demonstrate a lack of surprise to Defendant or an ability to cure.

The third factor, disruption at trial, is not relevant here, as trial has not yet begun. As to the fourth factor, the importance of the evidence, Plaintiff makes no argument; but, the importance of the proposed testimony is clear in light of Defendant's pending motion for summary judgment. That motion is based, in part, on Defendant's claim that Plaintiff can adduce no evidence of damages or breach of contract if his expert witnesses are excluded. (Def.'s Mot. Summ. J., ECF No. 30). Thus, the proposed testimony regarding the Eleanor's value and the cause of the Accident are crucial components of Plaintiff's case. Given this, it is all the more important that Defendant be put on notice of the exact nature of and basis for the proposed testimony.

Finally, the fifth factor the Court must consider is Plaintiff's explanation for his failure to provide the reports. Essentially, he offers none. Indeed, one of the more striking features of this dispute is Plaintiff's incredible assertion that he does not have to provide expert reports because "no reports have been generated" and "IMU has provided no authority, as none exists, which requires a party to provide an expert report that does not exist." (Pl.'s Resp. 2-3). The allegedly nonexistent authority, in fact, can be found in the plain language of Rule 26(a)(2)(B): "disclosure *must* be accompanied by a written report." (emphasis added) Obviously, Plaintiff's misreading of the Rules of Civil Procedure does not justify his failure to comply with their terms.

For these reasons, the Court finds that Plaintiff's omission of expert reports for the nine "un-deposed" witnesses (Morgan, Babbitt, Harmon, Phillip, Smith, Thornton, Kaufman, Geaghan, and Coupar) was neither harmless nor justified.

### 2. *James Renn*

The witness James Renn presents a different case. Although Plaintiff was clearly obligated to furnish an expert report from Renn, and although Defendant was just as clearly *not* required to depose Renn in order to discover the basis for his opinions, the fact remains that Defendant *did* depose him. In reviewing Renn's deposition transcript, the Court finds that he provided an explanation of the content and bases of his opinions, the facts he considered, his qualifications, his litigation experience, and his publications. (Renn Dep. *passim*, ECF No. 32, Ex. 5). Essentially, Defendant learned all the information from the deposition that would have been included in a proper expert report. *See* Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi). Defendant was thus able to cure any surprise that would otherwise have resulted from Plaintiff's omission. Therefore, the Court finds that the omission was harmless.

### C. *Sanctions and Further Disclosures*

In view of the preceding analysis, the Court concludes that, except as to James Renn, sanctions under Rule 37(c)(1) are available. The Court notes, however, that exclusion of testimony is not the only appropriate sanction under the rule, and that the Court possesses broad discretion to control the course of discovery, including the authority to order supplemental disclosure of expert witness information. *See* Fed. R. Civ. P. 37(c)(1) ("In addition to or instead of [exclusion of testimony], the court... may impose other appropriate sanctions."); Fed. R. Civ. P. 26(e)(1)(B) ("A party who has made a disclosure under Rule 26(a)... must supplement or correct its disclosure... as ordered by the court."). With this in mind, the Court rules as follows.

First, because the Court has found Plaintiff's omission to be harmless as to James Renn, Defendant's motion for sanctions will be denied as to that witness. The Court emphasizes, however, that the finding of harmlessness applies only to those facts and opinions that Renn actually disclosed at the deposition, and that his testimony at trial will therefore be limited strictly to those facts and opinions.

Second, as to the opinions of Captain Morgan and Thomas Babbitt regarding the cause of the Accident, and Captain Morgan's opinion as to the Eleanor's value at the time of the Accident, Defendant's motion will be granted, and the testimony will be excluded. As previously noted, it is clear from the record that these are the opinions of retained experts, not hybrids.

Finally, with regard to the remaining witnesses (Smith, Harmon, Phillip, Thornton, Kaufman, Geaghan, and Coupar), as well as any other opinions of Morgan or Babbitt not pertaining to causation or value at the time of the Accident, the Court will hold Defendant's motion in abeyance pending further disclosures, which the Court will order. Although Plaintiff's failure to carry his burden of proof has obliged this Court to find that these witnesses are retained experts, the actual record is silent on the point. There is therefore a possibility that excluding their testimony would remove relevant evidence from the case on account of a technicality, rather than genuine prejudice to Defendant. To prevent this outcome, the Court will order Plaintiff to take the following remedial actions.

First, Plaintiff shall make the disclosures required by Rule 26(a)(2)(C) for expert witnesses not filing reports, which are "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C) (West

2011). These requirements were added in an amendment to Rule 26 that took effect on December 1, 2010. By order of the Supreme Court, the amended rule is to be applied in all cases pending at the time of its enactment, to the extent that doing so is "just and practicable." 2010 U.S. Order 27 (C.O. 27). This Court finds that application of the new rule in this case poses no practical difficulties, and that doing so is just for the reasons articulated above. Importantly, the Court observes, in no uncertain terms, that compliance with this rule will require a more detailed disclosure than Plaintiff has thus far provided. In particular, the Court understands the rule's reference to "facts" to include those facts upon which the witness' opinions are based, and "opinions" to include a precise description of the opinion, rather than vague generalizations.[2]

Second, Plaintiff shall also disclose the following: a description of each witness' connection to the Eleanor and, if any, to the Accident; a description of how and when each witness came to form his opinions; a statement whether the witness' opinions were formed in the normal course of the witness' duty or activity in connection with the Eleanor; a statement whether the opinion was held at the time Plaintiff's counsel contacted the witness regarding the present litigation; a statement whether Plaintiff's counsel requested the witness to form an opinion; a summary of the witness' expert qualifications; and, a brief statement of how these qualifications relate to the witness' opinions.

Third, if Plaintiff determines, in view of this ruling, that any of the witness are in fact retained experts, he must produce a complete expert report.

Finally, Plaintiff shall make each witness available for deposition by Defendant. Once all disclosures have been made and any depositions have been completed, the Court, on motion, will revisit Defendant's request for sanctions, in light of the new record.

---

[2] For example, Plaintiff's description of Captains Harmon's and Phillip's opinion that the accident was the result of "third causes" would not be sufficient, absent a detailed statement of exactly what those causes are or might be.

## IV. Conclusion

Accordingly, an ORDER shall enter GRANTING IN PART, DENYING IN PART, and HOLDING IN ABEYANCE IN PART, Defendant's Motion To Strike Plaintiff's Expert Designations (ECF No. 29), and ORDERING further disclosures by Plaintiff as detailed therein.

Dated this 18th day of April, 2011

BY THE COURT:

/s/
James K. Bredar
United States District Judge