IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CLIFFORD E. MEREDITH,     :

  Plaintiff,       :

v.            :
             Civil Action No. GLR-10-837
INTERNATIONAL MARINE   :
UNDERWRITERS,
            :
  Defendant.
            :

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Defendant International Marine Underwriters' ("IMU") Renewed Motion to Strike Plaintiff Clifford Meredith's Expert Designation of Charles Smith ("Renewed Motion to Strike") and Renewed Motion for Summary Judgment. (ECF Nos. 54-55). This case involves IMU's denial of coverage, under an insurance policy, for damage sustained to Mr. Meredith's boat as a result of its sinking. The issues before the Court are (1) whether the Court should grant IMU's Renewed Motion to Strike where Mr. Meredith failed to disclose a written report as mandated by Federal Rule of Civil Procedure 26(a)(2)(B) and (C); and (2) whether the Court should grant IMU's Renewed Motion for Summary Judgment where Mr. Meredith cannot establish a genuine issue of material fact as to

causation or damages.  The issues have been fully briefed and no hearing is necessary.  See Local Rule 105.6 (D.Md. 2011).

The Court concludes that Mr. Meredith's repeated failure to provide adequate Rule 26(a)(2)(B) and (C) disclosures, pursuant to this Court's Order, warrants that his expert designation of Charles Smith as to damages be stricken.  Secondly, the Court denies IMU's Renewed Motion for Summary Judgment because (1) a genuine issue of material fact exists as to causation and (2) under Maryland law, damages is not an essential element of a cause of action for breach of contract.

## I.   BACKGROUND

In April 2009, Mr. Meredith purchased an insurance policy ("the Policy") from IMU, through the Avon Dixon Agency, LLC ("Avon Dixon"), to insure Mr. Meredith's vessel, "the Eleanor." (Compl. ¶ 2, ECF No. 2).  The Policy contained a "Perils Clause," which insured the Eleanor for physical damage, but a separate "Exclusion Clause" excluded from coverage any damage resulting from Mr. Meredith's failure to maintain the Eleanor in a seaworthy condition. (Id. ¶ 4); (Def.'s Mem. Law Supp. Summ. J. 2, ECF No. 54).

In October 2009, the Eleanor was found partially submerged while docked at a private residence ("the Accident"). (Def.'s Mem. Law Supp. Summ. J. 2).  Shortly thereafter, Mr. Meredith submitted a claim under the Policy for damage the Eleanor

2

sustained in the Accident. (Compl. ¶ 6). IMU assigned a surveyor, J. Stephen Russell, to inspect the Eleanor and determine the cause of the Accident. (Def.'s Mem. Law Supp. Summ. J. 3). Mr. Russell concluded that the Eleanor was taking on water through a number of "leakage points" that were caused by normal wear and tear, particularly a two-inch gap between two hull planks. (Id.). After receiving Mr. Russell's report, IMU denied coverage on the grounds that the Eleanor was unseaworthy at the time of the Accident, and that the damage, therefore, fell within the Policy's Exclusion Clause. (Id.); (Compl. ¶ 6).

On February 26, 2010, Mr. Meredith filed the instant Complaint in the Circuit Court for Anne Arundel County. (Notice of Removal ¶ 1, ECF No. 1). Mr. Meredith's primary contention is that the Accident was not caused by normal wear and tear or a failure to maintain the Eleanor in a seaworthy condition, and that the damage is, therefore, covered under the Policy's Perils Clause. (Compl. ¶¶ 22-23). On that basis, Mr. Meredith asserts a claim for breach of contract.[1] (Id. ¶¶ 18-23).

IMU removed the suit to this Court, invoking federal diversity jurisdiction. (Notice of Removal ¶¶ 2-4). During discovery, Mr. Meredith disclosed the identity of Charles Smith,

---

[1] Mr. Meredith's claims against IMU for fraud, negligent misrepresentation, and violation of the UCC and Maryland Consumer Protection Laws were dismissed on IMU's Motion for Summary Judgment. (See ECF No. 41).

an expert witness and the owner of Yacht Maintenance Co., who would offer opinion testimony regarding the cause of the Accident and damages. (Pl.'s Disclosure of Expert Witnesses 1, ECF No. 31-1). The text of that disclosure is reproduced below:

> Charles Smith: Charles Smith will testify as to repairs he performed on the subject vessel and the fairness reasonableness and causation of said repairs to the subject sinking. He will also testify [sic] future repairs to the vessel as a result of the sinking will cost $300,000. He will also testify the sinking was not as a result of failure to properly maintain said vessel nor as a result of normal wear and tear but as a result of third causes. Charles Smith will testify as to extensive maintenance performed on said vessel in 2007 and how with said maintenance the damage which caused the vessel to sink was not as [sic] result of normal wear and tear or failure to maintain.

(Id. at 3). Mr. Meredith did not, however, provide an expert report for Mr. Smith. (Def.'s Renewed Mot. to Strike Pl.'s Designation of Charles Smith 2 ["Def.'s Renewed Strike Mot."], ECF No. 55).

On July 26, 2010, IMU wrote to Mr. Meredith requesting all disclosures required by Federal Rule of Civil Procedure 26(a)(2), including expert reports. (Def.'s Mem. Law Supp. Mot. to Strike Pl.'s Expert Designations 2 ["Def.'s Strike Mem."], ECF No. 29-1). Mr. Meredith responded that "no reports had been generated," but noted that the witnesses were available for deposition. (Pl.'s Opp'n to Def.'s Mot. to Strike Pl.'s Expert

Designations 2, ECF No. 31; Pl.'s Supplemental Disclosures 1, ECF No. 31-4).

Thereafter, IMU filed a Motion to Strike Plaintiff's Expert Designation's for failure to disclose expert reports as mandated by Rule 26(a)(2)(B). (ECF No. 29). Finding for IMU, the Court issued a detailed Order requiring Mr. Meredith to provide the following:

a) The disclosures described in Rule 26(a)(2)(C);

b) A description of the witness' connection to the Eleanor and, if any, to the Accident;

c) A description of how and when the witness came to form the proffered opinion(s);

d) A statement whether the witness' opinion(s) were formed in the normal course of his duty or activities in connection with the Eleanor;

e) A statement whether the witness held the proffered opinion(s) at the time Mr. Meredith's counsel contacted him regarding the present litigation;

f) A statement whether Mr. Meredith's counsel requested the witness to form the proffered opinion(s);

g) A summary of the witness' expert qualifications; and

h) A brief statement of how the witness' qualifications enabled him to form the proffered opinion(s).

(Ct. Order 1-2, ECF No. 36). Additionally, the Court instructed Mr. Meredith that, if upon further reflection he determined that Mr. Smith was a retained expert witness, as defined in the Court's Order, he was required to produce a complete expert report as set forth in Rule 26(a)(2)(B). (Id.).

Following the above Order, Mr. Meredith supplemented his expert designation on May 13, 2011. (Pl.'s Updated Disclosure of Expert Witnesses Pursuant to Ct. Order ["Pl.'s Updated Disclosure"], ECF No. 44). In his updated disclosures, Mr. Meredith recapitulated much of his prior disclosure:

> Charles Smith will testify as to repairs he performed on the subject vessel and the fairness reasonableness and causation of said repairs to the subject sinking. He will also testify [sic] future repairs to the vessel as a result of the sinking will cost $1,000,000. He will also testify the sinking was not as a result of failure to properly maintain said vessel nor as a result of normal wear and tear but as a result of third causes. Charles Smith will testify as to extensive maintenance performed on said vessel in 2007 and how with said maintenance the damage which caused the vessel to sink was not as [sic] result of normal wear and tear or failure to maintain.

(Pl.'s Updated Disclosure 3). Mr. Meredith's Updated Disclosure further indicated that

a. "The estimates and bills of [Mr.] Smith . . . were previously attached to Plaintiff's Response to Request for Production of Documents." (Id. at 4).

b. Mr. Smith is a "water [man] and do[es] not regularly produce a CV." (Id.).

c. Mr. Smith has "not provided expert testimony in the past five (5) years) . . . ." (Id.).

d. "[Mr.] Smith performed maintenance on the subject vessel prior to its sinking and immediately thereafter. Upon sinking he was requested, by [Mr.] Meredith, to provide an estimate for repairs. His original estimate to Mr. Meredith was disclosed to Defense counsel. This was then updated January 27, 2011 to one million dollars and Defendant notified of the same in writing. His updated estimate is attached

and is updated to \$1,538,900,000 as the vessel continues to deteriorate due to lack of necessary repairs." (<u>Id.</u> at 4-5).

e. Mr. Smith is an expert whose name was provided by [Mr.] Meredith to counsel. (<u>Id.</u> at 5).

f. Mr. Smith's opinions, "other than those which were required to be updated, were formulated prior to the commencement of litigation." (<u>Id.</u> at 5).

g. Counsel for Mr. Meredith "has had no contact with experts nor requested they formulate opinions other than requesting an update for repairs from [Mr.] Smith. This request was done through [Mr. Meredith] and not through direct contact by counsel." (<u>Id.</u> at 5).

h. Mr. Smith's opinions were formed, except for a request for an updated opinion as to the cost of repairs, prior to the commencement of litigation. (<u>Id.</u> at 5).

i. Mr. Smith "performs boat maintenance as his trade." (<u>Id.</u> at 5).

j. "The lifetime of experiences in observing, sailing. [sic] Salvaging and fixing boats [is] the foundation[] for the opinions which will be proffered by . . . [Mr.] Smith." (<u>Id.</u> at 5).

IMU subsequently deposed Mr. Smith on August 1, 2011, with the understanding that based on the above disclosures, Mr. Smith was a hybrid witness. (Def.'s Renewed Strike Mot. ¶ 8). At his deposition, IMU alleges it became clear that Mr. Smith was a retained expert, such that the full disclosures set forth under Rule 26(a)(2)(B) were required to be produced. (<u>Id.</u>). At bottom, IMU alleges that the opinions attributed to Mr. Smith, in Mr. Meredith's expert designation, were not arrived at as part of Mr. Smith's ordinary dealings with Mr. Meredith or his

observations of the vessel. (Id.). Rather, they were derived from his review of a previously undisclosed report drafted by a third party surveyor and from review of information unrelated to the repairs that he performed in this matter. (Id.). This report was allegedly prepared on May 12, 2011, after the close of discovery, and was not provided to IMU until Mr. Smith's deposition on August 1, 2011. (See Def.'s Renewed Strike Mot. Ex. 2, ECF No. 55).

IMU now moves that the Court sanction Mr. Meredith for his failure to produce expert reports by excluding the testimony of Mr. Smith, pursuant to Federal Rule of Civil Procedure 37(b)(2).

## II.   DISCUSSION PART I

### A.   Motion to Strike Standard of Review

Federal Rule of Civil Procedure 26(a)(2)(A) requires litigants to disclose "the identity of any witness [they] may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed.R.Civ.P. 26.  Rule 26(a)(2)(B) further requires litigants to produce written reports for any witness who is "retained or specially employed to provide expert testimony in the case" or "whose duties as the party's employee regularly involve giving expert testimony." Id.  Those reports must include:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming

> them; (iii) any exhibits that will be used to
> summarize or support them; (iv) the witness's
> qualifications, including a list of all publications
> authored in the previous 10 years; (v) a list of all
> other cases in which, during the previous 4 years, the
> witness testified as an expert at trial or by
> deposition; and (vi) a statement of the compensation
> to be paid for the study and testimony in the case.

Fed.R.Civ.P. 26(a)(2)(B).

Rule 26(a)(2)(C), while less onerous, requires that the disclosure of witnesses who do not need to provide a written report must nevertheless disclose: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed.R.Civ.P. 26(a)(2)(C).

Rule 37(b)(2) gives teeth to a court imposed order to provide or permit discovery under Rule 26(a)(2) by permitting a trial court to impose sanctions when a party fails to obey an order to provide or permit discovery. <u>Hathcock v. Navistar Int'l Transp. Corp.</u>, 53 F.3d 36, 40 (4th Cir. 1995). Among the sanctions available, the express terms of Rule 37(b)(2) permit a trial court to:

> (i) direct[] that the matters embraced in the order
> or other designated facts be taken as established for
> purposes of the action, as the prevailing party
> claims; (ii) prohibit[] the disobedient party from
> supporting or opposing designated claims or defenses,
> or from introducing designated matters in evidence;
> (iii) strik[e] pleadings in whole or in part; (iv)
> stay[] further proceedings until the order is obeyed;

(v) dismiss[] the action or proceeding in whole or in part; (vi) render[] a default judgment against the disobedient party; or (vii) treat[] as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed.R.Civ.P. 37(b)(2)(A)(i)-(vii).

In determining what sanction to impose under Rule 37(b)(2), this Court is guided by consideration of four factors: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." S. States Rack and Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003).[2]

---

[2] The United States Court of Appeals for the Fourth Circuit has published at least two opinions that require consideration of the four-factor test when determining sanctions under Rule 37(b)(2). See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, 155 F.3d 500, 504 (4th Cir. 2001); accord Belk v. Charlotte-Mecklenburg Bd. of Educ., 269 F.3d 305, 348 (4th Cir. 2001). The broad language of these decisions suggests that a court must consider these four factors as part of any sanctions analysis under Rule 37(b)(2). More recent decisions, however, appear to require consideration of the four factors only when imposing the harsher sanctions of dismissal without prejudice and entry of default judgment. See Malhotra v. KCI Technologies, 240 Fed.Appx. 588, 590 (4th Cir. 2007) ("Prior to imposing the sanction of dismissal, the district court must consider four factors . . . ."); see also Riggins v. Steel Technologies, 48 Fed.Appx. 460, 462 (4th Cir. 2002) ("[W]e established four factors that a court must consider before imposing default judgment as a sanction."). Despite the apparent ambiguity, however, this court applies and finds the above referenced four-factor test instructive.

B.   **Analysis**

   **1.   Renewed Motion to Strike**

   The Court grants IMU's Renewed Motion to Strike because Mr. Meredith violated this Court's Order by repeatedly failing to provide adequate Rule 26(a)(2)(B) disclosures.

   **a.   Mr. Meredith is a retained expert witness.**

   Central to the Court's holding is its threshold determination that Mr. Smith is a retained expert witness.  The Court finds that Mr. Meredith has not carried his burden of demonstrating that Mr. Smith formed his opinions, as to damages, in the normal course of his duties or activities in connection with the Eleanor.

   Under Rule 26(a)(2)(B), a witness is required to provide an expert report if the witness is "retained or specially employed to provide expert testimony in the case" or has "duties as the party's employee [that] regularly involve giving expert testimony."  A witness must submit a report regarding any opinions formed specifically in anticipation of litigation, or otherwise outside the normal course of a duty. See Sullivan v. Glock, Inc., 175 F.R.D. 497, 500 (D.Md. 1997); Nat'l R.R. Passenger Corp. v. Ry. Express, LLC, 268 F.R.D. 211, 216 (D.Md. 2010) (citing Desrosiers v. Giddings & Lewis Mach. Tools, LLC, No. WDQ-07-2253, 2009 WL 4406149 at *5 (D.Md. Nov. 25, 2009), rev'd in part on other grounds, Desrosiers v. Mag Indus.

Automation Sys., LLC, No. WDQ-07-2253, 2010 WL 213286 (D.Md. May 25, 2010))).   The Court refers to this class of witness as *retained experts*.   Conversely, to the extent that a witness' opinion is based on facts learned or observations made "in the normal course of duty," the witness is a hybrid and need not submit a report.   Id.   A party seeking to avoid producing an expert report bears the burden of demonstrating that the witness is a hybrid.   Lee v. Valdez, No. 3:07-CV-1298-D, 2008 WL 4287730 (N.D.Tex. Sept. 18, 2008); Cinergy Commc'ns v. SBC Commc'ns, No. 05-2401-KHV-DJW, 2006 WL 3192544, at *3 (D.Kan. Nov. 2, 2006); see Tokai Corp. v. Easton Enterprises, 632 F.3d 1358 (Fed.Cir. 2011) (upholding district court's exclusion of testimony where proffering party failed to produce evidence that witness was a hybrid).

Here, Mr. Smith's opinion as to damages is based on a report that was prepared in anticipation of litigation.   Specifically, during IMU's deposition of Mr. Smith on August 1, 2011, it became clear that Mr. Smith was relying on a previously undisclosed damages survey and report performed by Quaker Neck Marine Surveying (the "Quaker Survey & Report").   The Quaker Survey was performed on May 10, 2011, and the Report was prepared on May 12, 2011, after the close of discovery.   (See ECF No. 23).   Mr. Smith then used the Report as the sole basis of the repair estimate he provided to IMU on May 13, 2011.   The

Quaker Report, however, was not provided to IMU until Mr. Smith's deposition on August 1, 2011.

Mr. Meredith's argument that Mr. Smith's opinion as to damages is based on the normal course of his duty in repairing and maintaining the vessel is without merit and belied by the preamble to the Quaker Report. The introductory text of the Report states in relevant part that the Survey was performed "at the request of Cliff Meredith" and that "a list of repairs and or replacements was compiled for the use of Mr. Meredith and the Yacht Maintenance Co." (Def.'s Renewed Strike Mot. Ex. 2 at 4, ECF No. 55).

Moreover, Mr. Smith's testimony during his deposition buttresses IMU's claim that the basis of Mr. Smith's opinion, as to damages, is the Quaker Report:

> Q. Have you been asked by anyone to provide any opinions in this case beyond what was done in these three repairs by Yacht Maintenance Company?
>
> A. I had been asked to provide what I thought might put the boat back into serviceable—prices to what it might cost to put the boat back into serviceable use and repair it to a pre-sinking condition.
>
> Q. And what would that be?
>
> A. Well, that would be—the estimate to that is supplied here on May 13th.
>
> Q. And that's a little over 1.5 million?
>
> A. Yes.

(Smith Dep. 52:1-14, Aug. 1, 2011).

Q.   Exhibit 6, your estimate, what part does this [Quaker Survey & Report] play in your estimate?

A.   What the [Quaker Survey & Report] did is, Mr. Meredith asked me numerous times to try to prepare a detailed estimate for him for purposes of cost of repair.  I told him that I did not have the amount of time it would take to prepare that.  We have been very, very—we've been blessed to be very, very, busy, and we are very busy.  **So I suggested that he obtain a survey—the services of a surveyor to write the basic outline, to go inspect the vessel, to write the outline, to which I would base some of my prices, and it would give me just a format for doing some pricing.**

Q.   So this survey of May 12, 2011 by Harry T. Seemans, S-E-E-M-A-N-S, you requested to report on the condition of the vessel and what needed to be done to form the basis of your estimate?

A.   I suggested to Mr. Meredith that in the essence of time that it may be better to have someone to come—someone who is familiar with the boat maybe, to come take a look at it so that I could work from there and that would preclude me from some of the detailed work that would take too much of my time, similar to having a paralegal do your research for you.

(Smith Dep. 63:12-64:13, Aug. 1, 2011) (emphasis added). Mr. Smith also confirmed that appraising the value of vessels, and more specifically, the Eleanor, was not within the normal course of his duties:

Q.   But in terms of what the value of the boat is for sale purposes that generally comes from someone else?

A.   Yeah.  And some of my general knowledge of what boats are worth.  **I mean, the surveyor is the one**

> **usually gets—the surveyor appraiser is usually**
> **the one getting paid to offer his expert opinion.**
> **My opinions in this field are very general and**
> **they're also very broad.** But because of the fact
> that we deal with so many types of vessels that
> we do stay somewhat abreast of what the values
> are, i,e., If I'm to read 10 different yachting
> magazines in a month, there are a few of these
> boats for sale, so you look and see what the
> asking price is.

(Smith Dep. 55:5-18, Aug. 1, 2011) (emphasis added). The
foregoing makes clear that Mr. Smith's opinion as to damages is
not based on facts learned or observations made in the normal
course of his duty, but instead on a damages survey that he did
not perform and on a detailed report that he did not draft.

Accordingly, the Court finds that, as a matter of law, Mr.
Smith is a retained expert witness and that Mr. Meredith,
therefore, had a duty to disclose an expert report as set forth
in Rule 26(a)(2)(B).

### b. Mr. Meredith's discovery omission violated an express court order.

Having determined that Mr. Meredith was obliged to provide
an expert report for Mr. Smith's opinions, the Court further
finds that Mr. Meredith's omission violated an express Court
Order.

In its Order dated April 18, 2011, the Court instructed
that if "within 30 days of this order, . . . Plaintiff, upon
reflection, determines that any witness is a retained expert, as
defined in the preceding memorandum, he shall produce for that

15

witness a complete expert report as required by Fed.R.Civ.P. 26(a)(2)(B)." (Ct. Order 2). Furthermore, the Order required Mr. Meredith to provide a "description of how and when [Mr. Smith] came to form the proffered opinion(s)." (Id.).

Mr. Meredith never provided an expert report for Mr. Smith. As discussed above, Mr. Meredith had a duty to disclose an expert report for Mr. Smith because Mr. Smith's expert opinion on damages is based on the Quaker Survey and Report; both of which were performed in anticipation of litigation and do not constitute facts learned or observations made in the normal course of his duty. The omission of the expert report and failure to disclose the Quaker Survey and Report plainly violated this Court's express Order.

Mr. Meredith argues that the Renewed Motion to Strike should be denied because (1) he provided IMU with the repair estimate, (2) IMU had the opportunity to depose Mr. Smith, and (3) Mr. Smith's expert opinion on damages is based on his firsthand knowledge of the condition of the Eleanor, the nature and cost of the initial repairs his company performed after the Eleanor sank, and the fact that he observed and viewed the Eleanor almost daily while moored at his place of business in Cambridge, Maryland. (Pl.'s Opp'n to Def.'s Renewed Mot. to Strike Pl.'s Expert Designation of Charles Smith 4 ["Pl.'s Opp'n to Def.'s Renewed Strike Mot."], ECF No. 56).

16

The Court finds these arguments unavailing and unpersuasive, however, because the record is clear that in drafting the repair estimate, Mr. Smith relied, not on his firsthand knowledge, experience, and observations, but, rather, on the Quaker Survey and Report. (See Smith Dep. 52:1-14, 55:5-18, 63:12-64:13); see also Def.'s Renewed Strike Mot. Ex. 2, at 4) (noting that the list of repairs and or replacements mentioned in the Quaker Report was compiled for the use of Mr. Meredith and Mr. Smith).

Additionally, making Mr. Smith available for deposition did not obviate the need to comply with this Court's Order.  As this Court previously noted, a party is not justified in its failure to disclose "simply because opposing counsel had an opportunity to depose the witness.  This would shift to the opposing party the burden that Rule 26 indisputably places on the party calling the witness."  (Ct. Mem. 8-9, ECF No. 35) (citing Carr v. Deeds, 453 F.3d 593, 605 (4th Cir. 2006) ("Every litigant in federal court is plainly entitled under Rule 26(a)(2)(B) to be given the information spelled out therein, and none should shoulder the burden to independently investigate and ferret out that information as best they can at the expense of their client.")).

Even assuming, *arguendo*, that Mr. Meredith reasonably believed Mr. Smith to be a hybrid witness, subject only to the Rule 26(a)(2)(C) requirements, his disclosures were nevertheless

17

inadequate and violated this Court's Order.  Specifically, the
Court instructed that:

> Plaintiff shall make the disclosures required by
> Rule 26(a)(2)(C) for expert witnesses not filing
> reports, which are "the subject matter on which the
> witness is expected to present evidence under Federal
> Rule of Evidence 702, 703, or 705" and "a summary of
> the facts and opinions to which the witness is
> expected to testify." Fed. R. Civ. P. 26(a)(2)(C)
> (West 2011). . . . Importantly, the Court observes, in
> no uncertain terms, that compliance with this rule
> will require a more detailed disclosure than Plaintiff
> has thus far provided. In particular, the Court
> understands the rule's reference to "facts" to include
> those facts upon which the witness' opinions are
> based, and "opinions" to include a precise description
> of the opinion, rather than vague generalizations.

(Ct. Mem. 12-13).  In an attempt to further clarify Mr.
Meredith's burden, the Court, by way of example, explained that
"Plaintiff's description of Captains Harmon's and Philip's
opinion that the accident was the result of "third causes"
would not be sufficient, absent a detailed statement of exactly
what those causes are or might be."  (Id. at n.2).
Notwithstanding this additional instruction, however, Mr.
Meredith's supplemental disclosure merely reiterated, verbatim,
much of the same conclusory and vague generalizations.  (See
Pl.'s Updated Disclosure 3) (stating that Captains Harmon and
Philip, as well as Charles Smith, would testify that the sinking
was the result of "third causes").  In addition, Mr. Meredith
continued his violation of this Court's Order when, despite an

express order to do so, he failed to provide a description of how and when Mr. Smith came to form the proffered opinion.

Accordingly, the Court finds that Mr. Meredith's omission violated an express Court Order.

### c. The Fourth Circuit's Rule 37(b) balancing test weighs in favor of granting IMU's Renewed Motion to Strike.

In view of the preceding analysis, the Court concludes that sanctions under Rule 37(b)(2)(A) are available.  As set forth above

> [i]f a party or a party's officer, director or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under rule 26(f), 35, or 37(a) the court where the action is pending may issue further just orders.

Fed.R.Civ.P. 37(b)(2)(A). In determining what sanction to impose under Rule 37(b)(2), the Court applies the Fourth Circuit's four-factor test, namely, "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." S. States, 318 F.3d at 597.

As to the first factor, bad faith, the Court finds that Mr. Meredith did act in bad faith.  This finding is substantially supported by the evidence recited herein, which demonstrates a

19

pattern of indifference for the rules of discovery and the authority of this Court. "In such cases, not only does the noncomplying party jeopardize his or her adversary's case by such indifference, but to ignore such bold challenges to the district court's power would encourage other litigants to flirt with similar misconduct." Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976); Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 504 (4th Cir. 1978).

In Mutual Federal, the Court found that the defendants acted in bad faith by "their noncompliance and their haphazard compliance" with discovery orders. Mut. Fed. Sav. and Loan Ass'n v. Richards & Assocs., Inc., 872 F.2d 88, 93. (4th Cir. 1989). Here, Mr. Meredith was given specific instructions by this Court, after his first failure to comply, on how to comply with his discovery obligations. Despite these instructions, however, Mr. Meredith disregarded the Court's Order when he failed to provide a description of how and when he formed his opinion. Moreover, Mr. Meredith failed to timely disclose the Quaker Report, which formed the basis of Mr. Smith's opinion on damages, although it was in his possession for several months after it was generated on his behalf.

As to the second element, prejudice, Mr. Meredith's dilatory conduct in disclosing the Quaker Report prejudiced IMU by unnecessarily delaying discovery and the adjudication of this

matter.  Specifically, due to Mr. Meredith's failure to timely disclose the Quaker Report, IMU was forced to seek leave to designate its expert witness and draft an expert report.  (See Mot. for Extension of Time for Additional Expert Disclosures ¶¶ 2-4, ECF No. 48).  Additionally, IMU is unable to adequately defend its case because Mr. Meredith has failed to disclose, and define in any meaningful way, precisely what "third causes" are and how they are responsible for the vessel's sinking.

As to the third factor, deterrence, this Court concurs with the Fourth Circuit that such "noncompliance . . . stalling and ignoring the direct orders of the court with impunity . . . must obviously be deterred." Mutual Federal, 872 F.2d at 93.

Finally, as to the fourth element, the Court finds that alternative sanctions would be ineffective in deterring future disrespect for the judicial system.  Central to the Court's reasoning is the fact that Mr. Meredith was given specific instructions on how to comply with his failed disclosures and failed to follow them.  Striking Mr. Meredith's expert designation of Mr. Smith, on the issue of damages is, on its face, a far less severe sanction than dismissal with prejudice or default judgment.

Accordingly, IMU's Renewed Motion to Strike Mr. Meredith's Expert Designation of Charles Smith will be granted.  The Court next addresses IMU's Renewed Motion for Summary Judgment.

### III. DISCUSSION PART II

**A.**   **Motion for Summary Judgment Standard of Review**

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48. A "material fact" is a fact that might affect the outcome of a party's case. Id. at 248; JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248; <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. <u>Anderson</u>, 477 U.S. at 248. Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. <u>Celotex Corp.</u>, 477 U.S. at 324.

**B.   <u>Analysis</u>**

> **1.   There is a genuine issue of material fact as to causation.**

The Court denies IMU's Renewed Motion for Summary Judgment because there is a genuine issue of material fact as to causation. As set forth above, summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); <u>see</u> <u>Celotex Corp.</u>, 477 U.S. at 323-25 (1986).

Having reviewed the record, the Court is persuaded that two equally plausible theories of causation emerge, which create a

genuine issue of material fact as to causation.  Under the first theory, the Eleanor sunk as a result of a failure to maintain the vessel in a seaworthy condition, as evidenced by alleged rot and loose planks in the hull.  Conversely, the second theory suggests that it is just as likely that the Eleanor grounded during a low tide and that high wave action caused her bottom framing to flex, which in turn caused gaps between the planks that allowed water to flow into the boat as the tide rose.  The Court finds that looking at the facts in the light most favorable to the non-moving party, Mr. Meredith, a reasonable jury could conclude that the Accident did not fall under the Policy's Exclusion Clause and was, therefore, covered as physical damage under the Perils Clause.

As such, the Court denies IMU's Renewed Motion for Summary Judgment under its causation argument.

**2.   In Maryland, "damages" is not an essential element of a claim for breach of contract.**

As an alternative theory, IMU seeks summary judgment on the basis that there is no material dispute of fact as to damages. Despite having stricken Mr. Meredith's sole retained damages expert, the Court denies IMU's Renewed Motion for Summary Judgment, under its damages argument, because under Maryland law, damages is not an essential element of a claim for breach of contract.

24

In Maryland, "[t]o prevail in an action for breach of contract a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." Taylor v. NationsBank, N.A., 776 A.2d 645, 651 (Md. 2001) (internal quotation marks and citations omitted).   It is not necessary, however, that the plaintiff prove damages resulting from the breach, "for it is well settled that where a breach occurs, one may recover nominal damages even though he has failed to prove actual damages." PFB, LLC v. Trabich, 304 Fed.Appx. 227, 228 (4th Cir. 2008) (citing Id.); see also Planmatics, Inc. v. Showers, 30 Fed.Appx. 117, 118-20 (4th Cir. 2002) (unpublished) (citing Stueber v. Arrowhead Farm Estates Ltd. P'ship, 519 A.2d 816, 818 (Md.Ct.Spec.App. 1987). Thus, even where a party fails to provide evidence sufficient to support a damages claim, "its cause of action for breach of contract cannot fail as a matter of law because [it] is entitled to, at the very least nominal damages, if the fact-finder determines there was a breach." PFB, LLC, 304 Fed.Appx. at 228 (citing Planmatics, Inc. v. Showers, 137 F.Supp.2d 616, 624 (D.Md. 2001)).

In this case, the Court finds that expert testimony, based upon the allegations and record, is necessary to determine actual damages.   See Wood v. Toyota Motor Corp., 760 A.2d 315 (Md. 2000) (noting that expert testimony is required when the

subject matter is so particularly related to some science or profession that it is beyond the ken of the average layman); see also Adams v. NVR Homes, Inc., 142 F.Supp.2d 649, 654 (D.Md. 2001). Nevertheless, Mr. Meredith's cause of action for breach of contract cannot fail as a matter of law because he is entitled to, at the very least, nominal damages, if the fact-finder determines there was a breach. Whether IMU breached its contract with Mr. Meredith is, therefore, a question to be resolved at trial.

Accordingly, the Court rejects IMU's argument as to damages and denies IMU's Renewed Motion for Summary Judgment on this ground.

## IV.   CONCLUSION

For the foregoing reasons, the Court will, by separate Order, GRANT Defendant's Renewed Motion to Strike Plaintiff's Expert Designation of Charles Smith (ECF No. 55) and DENY Defendant's Renewed Motion for Summary Judgment (ECF No. 54).


Entered this 20th day of July, 2012

/s/

_____
George L. Russell, III
United States District Judge

26